In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2439

LEONTE WILLIAMS,

*Plaintiff-Appellant*,

*v.*

VIPIN SHAH, SUZANN BAILEY,
JOHN BALDWIN, and JACQUELINE
LASHBROOK,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:15-cv-1278-SMY-RJD — **Staci M. Yandle**, *Judge.*

ARGUED MARCH 26, 2019 — DECIDED JUNE 12, 2019

Before BAUER, ROVNER, and BRENNAN, *Circuit Judges*.

ROVNER, *Circuit Judge.* Leonte Williams, an inmate in the
custody of the Illinois Department of Corrections, sued a
number of prison officials under 42 U.S.C. § 1983, alleging that
they violated his Eighth Amendment rights by providing

inadequate nutrition through a "brunch" program that served only two meals a day. The district court granted summary judgment in favor of the defendants. Because the record establishes without dispute that the brunch program was adequate as designed and also because Williams lacks evidence that any of the defendants knew that he was allegedly not receiving adequate nutrition, we affirm.

## I.

During the relevant time period, Williams was incarcerated at Pinckneyville Correctional Center in southern Illinois. During four or five months of Williams' stay at Pinckneyville, the facility participated in a pilot "brunch" program designed by Suzann Bailey, a licensed dietician and the Food Service Administrator for the Illinois Department of Corrections ("Department"). Prior to the brunch program, Illinois prisons used a regular meal plan that consisted of three meals per day, with "Master Menus" formulated by Bailey to provide approximately 2200 to 2400 calories per day, including a minimum of six ounces of protein per day. Dietary Managers at each correctional facility in Illinois were required to follow Bailey's Master Menus as closely as possible, making substitutions when necessary and replacing unavailable items with comparable foods.

The brunch program provided two meals per day rather than three, combining breakfast and lunch into a single meal. Bailey designed a set of Master Menus for the brunch program that were formulated to provide the same 2200 to 2400 calories per day as the three-meal plan, including at least eight ounces of protein (a two ounce increase over the regular three-meal

plan), and at least five servings of fruits or vegetables per day. As with the regular meal plan, Dietary Managers at the correctional centers were charged with implementing these Master Menus as closely as possible, again with allowances for substitutions of like items when planned foods were not available. In Bailey's professional opinion, two meals containing 2200 to 2400 calories, including eight ounces of protein, would provide adequate nutrition to individuals who were otherwise healthy and not in need of specific dietary accommodations for medical conditions. For persons having special dietary needs, the Department allowed therapeutic dietary trays as prescribed by physicians. At Pinckneyville, the brunch meal was served at 10:30 or 11:00 a.m. and dinner was served approximately six hours later.

Williams was subject to the pilot program from his arrival at the prison in July 2015 until the brunch program terminated in December 2015, apparently due to cost concerns. During that time, Williams filed multiple grievances complaining that the prison's food was making him ill. He mainly objected to the use of soy protein, asserting that it caused him stomach pain, constipation, diarrhea, migraine headaches, and excessive gas. He sometimes added in his grievances that he received only 1600 calories per day or fewer than 2800 calories per day, and requested that he be served breakfast.[1] He also com

---

[1] Williams asserts that the Department's own regulations require that prisoners receive 2800 calories per day, citing *Hall v. Sutton*, 2012 WL 407244 (S.D. Ill. Feb. 8, 2012). In that case, the inmate plaintiff alleged in his complaint that Department policy required a menu providing 2800 calories per day. The court assumed that number to be correct for the purposes of

(continued...)

plained that nurses on medical call mistreated him, and that the prison's physician refused to prescribe a soy-free diet and would not provide medical tests that Williams believed he needed. The primary relief that he sought was the cessation of the soy-based diet, thyroid testing and money damages, but he sometimes requested that he be served three meals per day and more calories.

His grievances were not resolved to his satisfaction and he filed suit under 42 U.S.C. § 1983, against Food Service Administrator Suzann Bailey, Warden Jacqueline Lashbrook, Department Director John Baldwin, and Dr. Vipin Shah, the prison's doctor. Williams asserted that: (1) Baldwin, Bailey and Lashbrook violated his Eighth Amendment rights by serving him soy-based meals that made him ill; (2) Shah violated his Eighth Amendment rights through deliberate indifference to his serious medical needs; and (3) Baldwin, Bailey and Lashbrook violated his Eighth Amendment rights by instituting a nutritionally inadequate brunch program. The district court granted summary judgment in favor of the defendants. Williams appeals.

---

[1] (...continued)
assessing whether the complaint stated a claim upon which relief could be granted. Current Department regulations provide that, "Food must be of sufficient nutritional value and provide a minimum of 1,800 to 2,000 calories for adults and 2,500 to 3,000 calories for juveniles per day." 20 Ill. Admin. Code 701.110 (a)(1). Williams does not assert that he is a juvenile. In any case, section 1983 protects plaintiffs from constitutional violations, not violations of state law or departmental regulations. *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006).

**II.**

On appeal, Williams challenges the judgment only as it relates to the brunch program count against defendants Baldwin, Bailey and Lashbrook.[2] We review the district court's grant of summary judgment *de novo*, examining the record in the light most favorable to the plaintiff and construing all reasonable inferences from the evidence in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Lapre v. City of Chicago*, 911 F.3d 424, 430 (7th Cir. 2018). Summary judgment is appropriate when there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson*, 477 U.S. at 247–48; *Lapre*, 911 F.3d at 430.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The Eighth Amendment places both restraints and duties on prison officials, and one of those duties is to ensure that inmates receive adequate food. *Farmer*, 511 U.S. at 832. In order for a prison official to be liable under the Eighth Amendment, two requirements must be met. First, the inmate must demonstrate that the deprivation suffered was, objectively, "sufficiently serious." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). That is, the prison official's act or omission must result in the denial of the minimal civilized measure

---

[2] Williams has therefore waived any challenge to the judgment as it relates to the claim related to soy protein and the claim against Dr. Shah, and we need not address either claim again. Dr. Shah was not named as a defendant in the brunch program count.

of life's necessities. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 298. We have recognized that, in some circumstances, the withholding of food may be sufficiently serious to satisfy the objective component of the *Farmer* test. *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). *See also Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012) (adequate food is among the minimal civilized measures of life's necessities); *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009) (under the Eighth Amendment, a prisoner's diet must provide adequate nutrition). To assess whether the particular withholding of food meets *Farmer*'s objective prong, a "court must assess the amount and duration of the deprivation." *Reed*, 178 F.3d at 853. *See also Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (noting that the withholding of food can in some circumstances meet the objective prong of *Farmer* depending on the amount and duration of the deprivation, as well as the medical condition of the inmate).

Second, the inmate must demonstrate that the prison official had a sufficiently culpable state of mind. In a case involving prison conditions, that state of mind is deliberate indifference to inmate health or safety. *Farmer*, 511 U.S. at 834. The Supreme Court adopted a subjective test for defining deliberate indifference in such cases:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the infer-

> ence could be drawn that a substantial risk of seri-
> ous harm exists, and he must also draw the infer-
> ence.

*Farmer*, 511 U.S. at 837. Thus, Williams must provide evidence that Bailey, Lashbrook and Baldwin knew that the brunch program was nutritionally deficient, or that inmates were being served nutritionally inadequate meals regardless of the requirements of the brunch program.[3]

We may affirm summary judgment on any basis we find in the record. *Nature Conservancy v. Wilder Corp. of Delaware*, 656 F.3d 646, 653 (7th Cir. 2011). Williams asserts both that the brunch program as designed failed to provide sufficient nutrition, and that he was being served meals that did not meet the requirements of the program as designed.[4] But the record

---

[3] Throughout the remainder of this opinion, we use phrases such as "nutritionally deficient" or "nutritionally inadequate" as shorthand for meals deficient enough to pose a substantial risk of serious harm, as determined by the objective test of *Farmer*. For Williams' claim that he was not receiving the meals described in the brunch program Master Menus, we need not decide here whether the meals that the prison served Williams met *Farmer's* objective standard because we instead decide that issue on *Farmer's* subjective prong.

[4] Although it is not entirely clear that Williams contests the constitutionality of the brunch program as designed, for the sake of completeness, we address that claim. In the district court, Williams both attacked the plan as designed and also asserted that he was "not seeking to prove Bailey is unqualified to create a menu that is nutritionally balanced, but a question exists as to what was actually fed to Williams." He further stated that, although Bailey may have designed a nutritional menu, the food served did

(continued...)

establishes without contradiction that the program was adequate as designed, which defeats his first theory of the case under the objective part of the *Farmer* test. And he also fails to present evidence that any of the defendants knew that he was not receiving adequate nutrition, dooming his other claim under the subjective prong of *Farmer*.

The only evidence in the record regarding the nutritional sufficiency of the brunch program Master Menus comes from Bailey, a licensed dietician. Bailey attached the Master Menus for 2015 to her affidavit. She averred that the two-meal brunch menus supplied 2200 to 2400 calories per day, the same number of calories provided in the regular three-meal menu plans. She opined that the brunch plan that she designed would be nutritionally adequate for a person not in need of a special diet for medical reasons. Williams does not assert that he required a special diet for medical reasons. Importantly, Williams supplied no evidence challenging the nutritional value of the brunch program Master Menus as designed. At oral argument, counsel for the plaintiff candidly conceded that he was unaware of any evidence in the record that the Master Menus themselves were nutritionally inadequate. Oral Argument, at 4:43–4:52. In the face of Bailey's affidavit and the

---

[4] (...continued)

not meet the requirements of the menu. R. 97-2, at 8. He also took Bailey to task for failing to implement procedures to ensure that the menus were implemented as designed. But he cites no evidence in the record supporting a claim that Bailey failed to ensure that the plan was followed, or even evidence that it was her responsibility to do so. On the contrary, Bailey's affidavit states that it was the responsibility of Dietary Managers to implement her plan.

menu plans themselves, the record is devoid of any evidence that the planned meals were deficient. On this record, Williams has failed to demonstrate a genuine issue of material fact regarding a substantial risk of serious harm from the brunch program as designed. That claim thus fails under *Farmer's* objective standard because the record establishes without dispute that the plan was formulated to provide adequate nutrition.

Williams also asserts, however, that the prison did not serve the planned meals required by the Master Menus, and that he received less food and fewer calories than Bailey planned for the brunch program. He averred that he "commonly" did not receive eight ounces of protein or five servings of fruits and vegetables, and he testified that he instead received 1500 or 1600 calories per day. But he has failed to produce any evidence that the named defendants were aware that he was not receiving the amount of food or the types of food that Bailey's Master Menus prescribed. Williams conceded that he never conveyed his complaints to Bailey. R. 83-1, at 119. Because the Dietary Managers at the individual facilities were responsible for implementing the Master Menus that she designed, Bailey had no way of knowing that prisoners at Pinckneyville allegedly were not receiving 2200 to 2400 calories, including eight ounces of protein and five servings of fruits and vegetables daily.

Williams asserts that Warden Lashbrook and Director Baldwin were aware that prisoners at Pinckneyville were not receiving enough food, citing his deposition testimony that he "continuously complained of migraines, restlessness and lack of energy due to the inadequate number of calories he was

eating on a daily basis." Brief at 15. But those cited passages of Williams' deposition reveal only that he complained to certain nurses and to Dr. Shah about the brunch program, not to Warden Lashbrook or Director Baldwin.[5] He also cites his affidavit in which he asserts that he commonly did not receive eight ounces of protein or five servings of vegetables per day, but he does not aver that he told the Warden or the Director about these deficiencies.

Neither the Warden nor the Director may be held liable unless they had some personal involvement in the alleged constitutional deprivation. *Consolino v. Towne*, 872 F.3d 825, 832 (7th Cir. 2017); *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014). Prison officials may satisfy the personal responsibility requirement of section 1983 if the conduct causing the constitutional deprivation occurs at the official's direction or with his or her knowledge and consent. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). *See also Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 614–15 (7th Cir. 2002) (to be held liable under section 1983, a supervisory official must have had personal involvement in the constitutional deprivation, essentially directing or

---

[5] Williams does not cite or rely on the numerous grievances that he filed as evidence that the defendants knew that inmates were being served a nutritionally inadequate diet. The grievances, copies of which were purportedly sent to the Warden and the Director, focused almost exclusively on Williams' objections to the soy content of the prison diet, a claim that he has waived on appeal. He also sometimes mentioned in the grievances that he believed he was not receiving adequate nutrition or calories, but because he has not cited or relied on those documents on appeal, we will not consider them in determining whether the defendants were aware that he was being denied adequate nutrition.

consenting to the challenged conduct). But even if we assume for the sake of argument that the Warden and Director were involved in enacting the brunch program (Williams offers no evidence regarding who was responsible for the decision), we have already determined that there is no evidence that the brunch program as designed was deficient. Because the Warden and Director did not know that the inmates were being deprived of adequate nutrition and were not personally involved in delivering the purportedly deficient meals, they may not be held liable under section 1983.

Finally, at oral argument, Williams cited the last paragraph of his affidavit as evidence that the Warden was aware that the prison provided inadequate nutrition and that the prescribed meal plan was not being followed. That passage states:

> During my incarceration at Pinckneyville, I received information from Warden Lashbrook who stated that she believed the brunch program constituted a violation of Eighth Amendment rights.

R. 97-4, at 2. In the district court, Williams cited this passage as support for a claim that "in a conversation with Lashbrook, Williams learned Lashbrook believed the brunch program was discontinued because of a ruling indicating it violated inmate's rights." R. 97-2, at 18. Although Williams characterizes his affidavit as evidence of a conversation with Lashbrook, the affidavit itself is vague on that point. We have no context explaining how Williams "received information" regarding a statement from the Warden or when this statement occurred. In any case, even if we assume that Warden Lashbrook told Williams that the program was discontinued because of a

ruling indicating that it violated prisoner's rights, this state-ment is nothing more than a conveyance of a legal conclusion made by an unidentified source. At most, the statement demonstrates that the Warden learned after the termination of the program that some unnamed person considered it constitu-tionally infirm. The Warden's understanding of the reason for the termination of the brunch program tells us nothing regarding whether she knew that the Dietary Manager or prison kitchen staff were not complying with the brunch program as designed but were instead serving nutritionally inadequate meals while the program was in place.

In sum, the record establishes without dispute that the brunch program as designed was nutritionally adequate, and so Williams fails on that claim to meet the objective component of the *Farmer* test. And he also lacks evidence that any of the named defendants were aware that subordinate prison staff were not serving the brunch Master Menus as designed but were instead providing inadequate amounts of food to the prisoners. That lack of knowledge forecloses any claim against the defendants under the subjective part of the *Farmer* test. The judgment of the district court is therefore

AFFIRMED.