In the

# United States Court of Appeals
### For the Seventh Circuit

———————————

No. 18-1910

DAMON GOODLOE,

*Plaintiff-Appellant,*

*v.*

KUL SOOD, *et al.,*

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:16-cv-4062 — **James E. Shadid**, *Judge.*

———————————

ARGUED OCTOBER 3, 2019 — DECIDED JANUARY 17, 2020

———————————

Before WOOD, *Chief Judge*, and BARRETT and SCUDDER,
*Circuit Judges*.

SCUDDER, *Circuit Judge*. Patients are often the best source
of information about their medical condition. A physician's
decision to persist with ineffective treatment and ignore a pa-
tient's repeated complaints of unresolved pain and other
symptoms can give rise to liability—or, at the very least, raise
enough questions to warrant a jury trial. Damon Goodloe's
case is a good example.

An inmate in the care of the Illinois Department of Corrections, Goodloe invoked 42 U.S.C. § 1983 and alleged that his treating physician within the Hill Correctional Center responded to his repeated complaints of rectal bleeding and severe pain with a course of demonstrably ineffective treatment and undue delay in sending him to an outside specialist for evaluation. The discovery process revealed medical records and other documents corroborating many of these allegations. On the record before us, then, Goodloe has brought forth enough evidence to put to a jury his Eighth Amendment claim against his treating physician for deliberately indifferent medical care. We therefore reverse the district court's conclusion to the contrary, while otherwise affirming the entry of summary judgment in all other regards.

## I

## A

The summary judgment record supplies the facts—all of which we must construe in the light most favorable to Damon Goodloe as the plaintiff and non-moving party. See *Shields v. Ill. Dep't of Corrections*, 746 F.3d 782, 786 (7th Cir. 2014).

Goodloe arrived at the Hill Correctional Center in Galesburg, Illinois in July 2013, and immediately complained of pain from rectal bleeding. He told a nurse that he believed his hemorrhoids had flared up again. Medical staff referred Goodloe to Hill's medical director, Dr. Kul Sood, who prescribed hemorrhoid medication.

Goodloe's pain continued through the summer and fall of 2013. In appointments with Dr. Sood in September and October, Goodloe reported acute and recurring pain. Without

performing a rectal exam, Dr. Sood continued Goodloe on the hemorrhoid medication.

In December 2013, and in response to Goodloe's ongoing complaints of severe pain during bowel movements, a nurse practitioner performed a rectal exam and observed anal condyloma—a condition marked by small warts inside and around the outside of the anus. This diagnosis came as no surprise to Goodloe, as he had the warts for at least 18 years and believed they had nothing to do with the excruciating rectal pain he continued to experience. Goodloe conveyed this view to Dr. Sood in a January 2014 appointment. Dr. Sood responded by adding a topical ointment to treat the warts.

As Goodloe's pain persisted, he grew exasperated with Dr. Sood's treatment and believed that the cause of his ongoing suffering was an internal condition, not hemorrhoids or warts. He became convinced he needed to see an outside specialist and asked family members to call the Hill facility to echo this request. In February 2014, in the first of many written grievances, Goodloe explained that he experienced so much pain during bowel movements that he had to lie in bed for hours until the pain subsided. He also underscored his belief that the source of pain was an internal condition not yet diagnosed or treated, and, going even further, he requested that he be treated by a specialist. In a grievance submitted on March 15, 2014, Goodloe accused Dr. Sood of focusing on the external anal warts while "deliberately ignoring" repeated complaints about internal sources of persistent rectal pain.

During this same period, Dr. Sood consulted with a colleague, Dr. Neil Fisher, who served as Wexford Health Services' Corporate Director of Utilization Management, about Goodloe. (Wexford contracts to provide health care to inmates

in Illinois.) After that consult, Dr. Sood decided to condition Goodloe's seeing an outside specialist on first trying to treat the anal warts with topical trichloroacetic acid, commonly shorthanded TCAA. The application of the acid treatment only added to his pain, leaving his rectum feeling raw and burned—so much so that Goodloe, as he put it, "could barely wipe after a bowel movement." At no point throughout the spring and early summer of 2014 did Goodloe relent in his view that he had an internal condition (having nothing to do with his anal warts) that continued to cause miserable pain. Indeed, in appointments with Dr. Sood on May 28, June 2, and June 9, Goodloe renewed his complaints of untreated pain, each time saying he believed its source was internal. And each time Dr. Sood responded by staying the course and continuing with the TCAA applications, though on June 9 he did tell Goodloe he intended to confer with a colleague on the ongoing course of care.

By June 17, 2014, Dr. Sood recognized that Goodloe remained in much pain and that treating the anal warts with TCAA was not helping. It was that same day that Dr. Sood consulted anew with Dr. Fisher and together they decided the time had come to refer Goodloe to an outside specialist for a colorectal evaluation.

But no evaluation took place for another three months. Precisely why is not clear. It seems Goodloe was referred to one specialist, though that referral resulted not in a colorectal exam but instead an attempt to schedule surgery to remove the anal warts. Upon realizing around July 1 that the first specialist sought to perform surgery (rather than provide an evaluation), Dr. Sood and Dr. Fisher spoke again and cancelled the referral. They agreed that wart-removal surgery was not

the right next step and decided to give the topical acid treatment another try—a path they considered to be "conservative treatment." Dr. Sood determined to undertake at least two more months of topical acid treatment before reconsidering referring Goodloe to a specialist.

Meanwhile, Goodloe continued to suffer from severe bowel pain and rectal bleeding. His frustration boiled over during the summer of 2014, and he expressed that exasperation by filing new grievances reinforcing his complaints. In his July 7 grievance, for example, Goodloe exclaimed, "my pain and issues are INTERNAL!!!" and "my situation is getting worse with each passing day" and "I have to lay down for hours after[] [every bowel movement] because of the excruciating pains."

Approximately one month later, on August 4, in yet another complaint, Goodloe wrote, "I desperately wish somebody would listen to me about my internal pains, and please stop ignoring my complaints in my grievances [w]hich have been clear and straight to the point." In that grievance, Goodloe reminded Hill's medical staff that his warts had never bothered him in 18 years, whereas "[t]he internal pains … have only started within the last year."

Between May 28 and July 31, 2014, Goodloe complained five times of ongoing, miserable rectal pain that he insisted was "internal" and not yet diagnosed or treated. And, all told, Goodloe filed four lengthy and detailed grievances on the issue during his first year at Hill.

It was not until September 2014 that Dr. Sood again determined that Goodloe needed to be evaluated by a colorectal specialist. That evaluation occurred on September 22, when

Goodloe saw a colorectal specialist at the Order of St. Francis Clinic in Galesburg. The specialist immediately diagnosed an anal fissure—a small tear in the anal tissue lining—and arranged for prompt treatment. Goodloe underwent surgery on October 3 and testified that he experienced instant pain relief. The rectal bleeding likewise abated and in time altogether stopped.

B

In March 2016, Goodloe, proceeding *pro se* and under 42 U.S.C. § 1983, filed suit alleging a violation of his Eighth Amendment rights by multiple defendants, only two of whom are relevant here—Dr. Sood and Dr. Fisher. Goodloe's complaint was as clear and precise as the grievances he submitted within the Hill Correctional Center. He alleged that Dr. Sood acted with deliberate indifference to complaints of repeated and unrelenting rectal pain, including by not only persisting with a course of treatment (the TCAA, in particular) that was ineffective, but also by delaying evaluation by an outside colorectal specialist. Goodloe further alleged that Dr. Fisher was deliberately indifferent for many of the same reasons. Separately, Goodloe contended that Dr. Sood violated his First Amendment rights by retaliating against him (by denying and delaying proper medical care) for filing multiple grievances within the Hill facility.

Discovery ensued. The defendants then moved for summary judgment. The district court granted the defendants' motion on each of Goodloe's claims, determining that Dr. Sood's care reflected not deliberate indifference but a "measured course of treatment" designed to "alleviate the internal pain Plaintiff experienced before seeking consultation by [an] outside specialist." On this reasoning, the court saw

no material unresolved question as to whether Dr. Sood deliberately delayed referring Goodloe to the Order of St. Francis facility for the colorectal exam. If anything, the court added, any delay Goodloe experienced appeared to have been the product of an administrative scheduling error, for which Dr. Sood shouldered no responsibility.

The district court likewise found that Goodloe failed to uncover any evidence establishing that Dr. Fisher, who only consulted with Dr. Sood, deliberately failed to act in the face of any known risk of harm. As for the retaliation claim, the court saw no evidence suggesting that Dr. Sood, in response to Goodloe's grievances, took any actions to deny or delay the provision of medical care.

This appeal followed, and we appointed counsel to represent Goodloe.

## II

### A

The controlling legal framework is well established. Goodloe's claims of deliberate indifference to his medical needs arise under the Eighth Amendment and have both objective and subjective components. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); see also *Williams v. Shah*, 927 F.3d 476, 479 (7th Cir. 2019). The inmate must show an "objectively serious medical condition" that each named defendant responded to with deliberate indifference. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). Nobody disputes that Goodloe suffered from an objectively serious medical condition. His claims therefore turn on the subjective component and, more specifically, whether he has created a genuine issue of fact as

to whether Dr. Sood and Dr. Fisher responded with deliberate indifference to his persistent complaints of severe rectal pain.

As its name implies, deliberate indifference requires "more than negligence and approaches intentional wrongdoing." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (internal citation omitted); see also *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Rather, the evidence must show that the prison official acted with a "sufficiently culpable state of mind," meaning the official knew or was aware of—but then disregarded—a substantial risk of harm to an inmate's health. *Farmer*, 511 U.S. at 834, 837; see also *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (explaining that the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference").

Two lines of cases aptly fit Goodloe's claim. *First*, our decision in *Greeno v. Daley* confirms that an inmate can establish deliberate indifference by showing that medical personnel persisted with a course of treatment they knew to be ineffective. 414 F.3d 645, 654–55 (7th Cir. 2005). The medical defendants in *Greeno* failed to conduct necessary tests, ignored specific treatment requests from the inmate, and persisted in offering weak medication—all in the face of repeated protests that the medication was not working. See *id.* In reversing an award of summary judgment for those defendants, we underscored a point that applies with full force here: when a doctor is aware of the need to undertake a specific task and fails to do so, the case for deliberate indifference is particularly strong. See *id.* at 655. Put most bluntly, faced with an inmate

experiencing ongoing suffering from a serious medical condition, a prison physician cannot "doggedly persis[t] in a course of treatment known to be ineffective" without violating the Eighth Amendment. *Id.*

*Second*, our cases likewise establish that "inexplicable delay" in responding to an inmate's serious medical condition can reflect deliberate indifference. See *Petties*, 836 F.3d at 731. That is especially so if that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering. See *Williams v. Liefer*, 491 F.3d 710, 715–16 (7th Cir. 2007).

## B

Goodloe came forward with enough evidence to support his deliberate indifference claim against Dr. Sood under either theory of liability. Based on the summary judgment record, a reasonable jury could conclude that Dr. Sood's persistence in the ineffective TCAA treatment, or his delay in getting Goodloe to an outside specialist, or both, amounted to deliberate indifference. At the very least, Goodloe showed enough of a dispute on these questions to put his claim to a jury.

Recall that Dr. Sood began the TCAA treatment in April 2014 and continued it throughout the summer and fall. Indeed, Dr. Sood maintained that course of treatment even after acknowledging, as part of his June 2014 consult with Dr. Fisher, that Goodloe had shown "no improvement." Even more, the June 2014 consult ended with Dr. Sood believing that the time had come for Goodloe, who continued to experience unrelenting rectal pain, to see an outside specialist for a colorectal exam. When that did not immediately occur, whether because of a scheduling error or otherwise, Dr. Sood resorted not to taking a step to be certain Goodloe saw an

outside specialist, but instead continued the TCAA treatment. All along Dr. Sood heard complaints from Goodloe that treating his anal warts with topical acid was providing no relief for the acute rectal pain. These complaints throughout the summer of 2014 mirrored the reports of unrelenting pain that Goodloe voiced for at least the last six months of 2013.

The record allows a finding that, at least by June 2014, Dr. Sood persisted with the TCAA treatment knowing it was not working and that Goodloe continued to suffer from severe rectal pain and ongoing bleeding. See *Greeno*, 414 F.3d at 654–55 (holding that an inmate had raised a jury issue by showing the prison medical staff knew the inmate needed to see an outside specialist yet continued to administer medications they knew had proved ineffective).

Goodloe's second and related theory of deliberate indifference based on Dr. Sood's delay in getting him to an outside specialist likewise finds adequate support in the record. Go back to what happened in June 2014, for it was then that Dr. Sood, upon consulting with Dr. Fisher, decided that Goodloe needed more help than anyone at the Hill facility could offer. The TCAA and hemorrhoid treatment had not worked; Goodloe remained in substantial pain, and he needed to see a specialist. But that did not occur for another three months, until September 22.

Although the district court determined that the delay in Goodloe's receiving the outside evaluation reflected an administrative error, a jury could see the facts another way. Indeed, on appeal Dr. Sood has not defended the delay on the basis of any administrative mishap. But there is more. When Goodloe first realized that he was not going to see an outside specialist but instead would have to undergo new rounds of

TCAA treatment for his anal warts, he complained in no un-
certain terms, exclaiming in his July 7 grievance that "my pain
and issues are INTERNAL!!!" and "my situation is getting
worse with each passing day." The complaint prompted no
action, no renewed effort to arrange for the outside consulta-
tion Dr. Sood had decided two weeks earlier was medically
necessary. A jury could find that there was no medical justifi-
cation for the delay. See *Petties*, 836 F.3d at 730–31; see also
*Williams*, 491 F.3d at 715–16.

In the end, Goodloe has pointed to enough evidence to
survive summary judgment.

C

We turn now to Goodloe's deliberate indifference claim
against Dr. Fisher. While Goodloe urges us to view Dr. Fisher
through the same evidence supporting the claim against
Dr. Sood, we see important differences.

On this claim, the district court properly entered summary
judgment for Dr. Fisher. Foremost, the record shows that
Dr. Fisher never directly treated Goodloe and instead played
a much more limited role by consulting on three occasions
with Dr. Sood about particular care decisions. While the rec-
ord may support a finding that Dr. Fisher was aware from
these consults of Goodloe's unresolved pain, we do not see
evidence permitting an inference that Dr. Fisher responded
with deliberate indifference. See *Arnett*, 658 F.3d at 751 (ex-
plaining that deliberate indifference requires "more than neg-
ligence and approaches intentional wrongdoing"). Nothing
shows Dr. Fisher's awareness of the extent of Goodloe's suf-
fering or persistent complaints and requests for a new course
of treatment. See *Petties*, 836 F.3d at 728 ("[A] plaintiff must

provide evidence that an official *actually* knew of and disregarded a substantial risk of harm."). Nor at a more specific level do we see evidence that Dr. Fisher, in not approving Goodloe's undergoing the wart-removal surgery in June 2014, did so as part of a deliberate effort to prolong Goodloe's pain or otherwise withhold a known and more appropriate course of treatment.

At bottom, then, we conclude that Dr. Fisher's role and knowledge was too limited to create a jury question.

## III

We close with a brief word on Goodloe's First Amendment retaliation claim against Dr. Sood. Goodloe primarily rooted his claim in the contention that Dr. Sood retaliated against him for filing grievances complaining of poor medical care, most especially the aggressive and prolonged TCAA treatment.

A successful retaliation claim requires proof of (1) protected First Amendment activity; (2) a deprivation likely to deter future protected speech; and (3) that the protected activity was "at least a motivating factor" for the alleged deprivation. *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008).

The district court was right to conclude that the record lacked evidence permitting a finding that Dr. Sood made any treatment decision in response to Goodloe's submission of multiple grievances. Stated another way, on our fresh review of the record we see no facts allowing a jury to infer that Dr. Sood's course of treating Goodloe reflected any retaliatory animus. Nor, contrary to Goodloe's suggestion, do we see anything suspicious about the timing of his submission of any grievance in relating to Dr. Sood's June and July 2014

decisions to continue the TCAA treatment and delay a referral to an outside colorectal specialist. See *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985) (observing that a "lengthy period of time … greatly weakens any inference" that the action was retaliatory); see also *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (determining, albeit in the employment discrimination context, that the challenged timeline was not suspicious because adverse action did not "follow[] close on the heels of protected expression").

*   *   *

To avoid summary judgment on his Eighth Amendment claim against Dr. Sood, Goodloe had to demonstrate the existence of disputed, material issues of fact to proceed to trial. He did so, in no small part because of his own care and diligence while proceeding *pro se* in the district court and now in our court with the benefit of very able appellate counsel who with his law firm's support has offered his services *pro bono*.

We VACATE the district court's grant of summary judgment in favor of Dr. Sood on Goodloe's deliberate indifference claim and REMAND for further proceedings. We otherwise AFFIRM.