NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 29, 2021[*]
Decided June 30, 2021

*Before*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 20-1439

| | |
|---|---|
| KEVIN HALL, | Appeal from the United States District |
| *Plaintiff-Appellant* | Court for the Central District of Illinois. |
| | |
| *v.* | No. 17-4248-CSB |
| | |
| KUL SOOD, *et al.*, | Colin S. Bruce, |
| *Defendants-Appellees.* | *Judge.* |

## O R D E R

Kevin Hall sued medical professionals at the Henry Hill Correctional Center in Galesburg, Illinois, and the prison's healthcare contractor, Wexford Health Sources Inc., under 42 U.S.C. § 1983. He claimed a violation of his Eighth Amendment rights based on their allegedly inadequate treatment of his left bicep tear and arm pain while he was

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

a prisoner there. The district court ultimately granted the defendants' motion for summary judgment, and we affirm.

We recount the facts in the light most favorable to Hall. *See Murphy v. Wexford Health Sources Inc.*, 962 F.3d 911, 913 (7th Cir. 2020). Hall first complained of tingling and numbness in his upper extremities in mid-2011. Dr. Kul Sood examined him and prescribed a 30-day course of gabapentin and acetaminophen. That December, Hall injured himself doing bicep curls, and Dr. Sood diagnosed a possible tear to Hall's left bicep, which an x-ray confirmed. Hall's arm improved for a while, but the pain came back. In March 2013, Hall complained of tingling and numbness in his right arm, and again reported left-arm pain in February 2014. Both times, Dr. Sood noted a normal grip and range of motion. He prescribed gabapentin for the tingling and ibuprofen and carbamazepine for the pain.

Hall's arm pain flared again in 2015. After examining Hall in October, Dr. Sood again noted a normal range of motion and prescribed a vitamin supplement and acetaminophen in addition to Hall's existing pain medication. When Hall continued to report pain, Dr. Sood increased his ibuprofen dosage and discontinued a cholesterol medication known to cause muscle pain. Then, in June 2016, Dr. Sood reinstated ibuprofen after Hall said that meloxicam, which another provider had substituted for the ibuprofen, did not alleviate his pain.

Dr. Catalino Bautista first saw Hall in August 2016, when Hall reported two years of left-arm pain and one year of right-arm pain. Dr. Bautista observed a mostly normal range of motion but limited abductive ability in Hall's left shoulder. He ordered physical therapy and independent exercises with therapy putty, which Wexford administrators approved five days later. Soon, however, a nurse, Leola Parrish, advised him that prison officials had banned the putty due to security concerns, but that Dr. Bautista said he could use a balled-up piece of clothing the same way.

After observing limited mobility in Hall's right shoulder at an October 2016 appointment, Dr. Bautista recommended an orthopedic evaluation, which Wexford administrators approved on November 2. A week later, Dr. Bautista suspended Hall's physical therapy because two nurses, Sara Faetanini and Paula Young, reported that Hall was reading a magazine during a session.

On November 18, the orthopedic surgeon who examined Hall recommended an MRI, a muscle test, and a nerve test, which Dr. Stephen Ritz, a Wexford administrator, approved. After testing, the surgeon diagnosed Hall with a chronic torn right rotator

cuff and carpal tunnel syndrome in both hands. Hall had right-arm surgery for these conditions in December 2016. When he returned to the prison, he stayed in the infirmary, where Parrish, who lacked prescribing authority, administered Hall's post-surgery medications. Hall complained that they did not alleviate his pain, so Dr. Bautista changed them.

When Hall was discharged the next month, Dr. Bautista continued the pain medications, ordered a medical cuff, and recommended follow-up physical therapy and orthopedic evaluation, which administrators again approved. Hall was evaluated and scheduled for surgery to address the carpal tunnel syndrome in his left hand.

Hall appeared to recover steadily from the surgeries until April 2017, when he saw Dr. Bautista for left bicep pain, which Hall said dated back to his 2011 weight-lifting injury. Dr. Bautista diagnosed a prior bicep rupture and referred him to the regional medical director, who ordered x-rays. The pain continued, and Dr. Bautista prescribed more medication and ordered another follow-up visit. By November 2017, however, Hall reported that nothing Dr. Bautista had prescribed alleviated his pain.

Hall then brought this deliberate-indifference suit against numerous defendants. After screening, the district court allowed Hall to proceed against doctors Sood and Bautista; nurses Parrish, Faetanini, and Young; administrator Ritz; and Wexford. Hall alleged that since September 2015,[1] the defendants provided insufficient treatment for his pain after their prescriptions proved ineffective and unduly delayed more aggressive treatment, including surgery, causing him permanent injury.

The defendants moved for summary judgment, and the district court granted their motion. We review that decision de novo, drawing all reasonable inferences in Hall's favor. *Gill v. Scholz*, 962 F.3d 360, 363 (7th Cir. 2020). To avoid summary judgment, Hall needed to present evidence that the defendants knew of and disregarded a serious risk to his health. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994);

---

[1] On appeal, Hall contends that his claims date back to 2011 and have been artificially limited by the defendants and the district court. But in his complaint and his deposition testimony, he asserted malfeasance from 2015 on, and that is how the record was developed at summary judgment. Further, the statute of limitations (which we borrow from state law in § 1983 cases, *see Wilson v. Garcia*, 471 U.S. 261, 276 (1985)) is two years, 735 ILCS 5/13-202, and Hall makes no legal argument why claims about conduct before 2015 are not barred in this 2017 lawsuit, so we do not discuss them.

*Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). He also needed evidence that the actions he challenges caused harm. *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020).

With respect to the judgment for doctors Sood and Bautista, Hall first argues that they each continued ineffective treatment despite knowing that it did nothing to help him. A prison doctor's persistence in a course of treatment known to be ineffective is a departure from minimally competent medical judgment, and therefore evidence of deliberate indifference. *See Petties,* 836 F.3d at 729–30. Although Hall sees his continuing pain as evidence that the doctors' treatment was constitutionally inadequate, the record contains no evidence that they used anything but their professional judgment when treating him. *See id* at 728. The doctors adjusted Hall's prescriptions—altering dosages or choosing new medications—when he complained that they did nothing, or when, as in the case of acetaminophen, it caused constipation. They did not, therefore, "continue" the same ineffective treatment. Further, the record shows that the doctors' prescriptions and therapeutic orders were consistent with generally accepted medical practices. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Hall provided no evidence that his course of treatment was a departure from medical judgment, let alone an extreme one.

Relatedly, Hall contends that the doctors unduly delayed medically necessary treatment for his arm pain and numbness; he believes they should have immediately ordered MRIs and surgery. But Hall presents no evidence that either doctor unduly prolonged his pain, or that any delay resulted from ill intent, as he must to prevail on a deliberate indifference claim based on delayed treatment. *Burton v. Downey*, 805 F.3d 776, 771 (7th Cir. 2015); *see also Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007). The record shows that the doctors timely responded to Hall's complaints and escalated treatment over time. At his 2015 visits, Dr. Sood addressed Hall's arm pain by testing his range of motion and adjusting his pain medication based on Hall's complaints. Dr. Bautista also treated Hall promptly: He ordered physical therapy and home exercise, recommended the orthopedic visits that led to surgery, and remained responsive to Hall's condition during his surgery recovery. None of this is consistent with impermissible delay. *See Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017).

Hall also protests the entry of summary judgment for Parrish, who informed him of the ban on exercise putty and who administered the ineffective post-surgery pain medication. But neither of these actions show that Parrish recklessly disregarded Hall's medical needs. S*ee Petties*, 836 F.3d at 728. On both occasions, she was following doctors' instructions: She relayed Dr. Bautista's suggestion of using balled-up clothing instead of the banned putty, and she administered pain medication as prescribed, informing Hall

that she had no authority to prescribe anything different. With respect to these actions, therefore, she was not personally responsible for Hall's treatment. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019).

Hall next contends that nurses Faetanini and Young deliberately interfered with his treatment by getting his physical therapy suspended. But all they did was report that he was reading at his therapy appointment. Even if we assigned them personal responsibility for Dr. Bautista's decision to suspend the therapy, *see id.*, Hall has not shown that stopping the sessions nine days before his orthopedic evaluation—which led to different treatment—caused him any harm. *See Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019).

Hall also argues that Ritz, the Wexford administrator, knew of Hall's serious medical condition and impermissibly delayed his treatment. But because the doctors' recommendations were approved shortly after they were submitted, Hall has no evidence that there was any injurious delay from the approval process, much less that Ritz had the required culpability for deliberate indifference. *See Burton*, 805 F.3d at 785.

Hall cannot prevail on his claim against Wexford, either. Wexford cannot be vicariously liable for the constitutional violations of its employees. *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). Instead, Hall must show that a Wexford policy or practice enabled a constitutional deprivation. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). But Hall lacks evidence that any underlying constitutional violation occurred, *see Pyles*, 771 F.3d at 412, or that Wexford's approval process for specialist referrals and procedures—which proceeded quite swiftly in this case—slowed down his treatment and resulted in any injury. *See Gabb*, 945 F.3d at 1032.

Finally, Hall mentioned in his opening brief the denials of his motions for attorney representation, but he did not develop any argument that the district court applied the wrong standard or otherwise erred. Therefore, we have no basis for reviewing the decisions. *See Milligan v. Bd. of Tr. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012); *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467–68 (7th Cir. 2010).

AFFIRMED