In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2351

TYRONE GABB,

*Plaintiff-Appellant,*

*v.*

WEXFORD HEALTH SOURCES,
INC., et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois
No. 15-cv-01415 — **J. Phil Gilbert**, *Judge.*

ARGUED MARCH 28, 2019 — DECIDED JUNE 17, 2019

Before RIPPLE, MANION, and SYKES, *Circuit Judges.*

MANION, *Circuit Judge.* While serving a prison sentence at
the Lawrence Correctional Center in Illinois, Tyrone Gabb ex-
perienced severe back pain whenever he stood too long (15 to
20 minutes). After treatments he received did not relieve his
pain, Gabb sued two members of the medical staff at Law-
rence, Dr. John Coe and Nurse Tammy Kimmel, alleging they
were deliberately indifferent to his back pain in violation of

his constitutional right to be free from cruel and unusual punishments. Gabb also sued Wexford Health Sources, Inc., the private company that provided medical services at Lawrence. The district court granted summary judgment to all defendants, and Gabb appeals. Because Gabb has not presented any evidence showing the defendants caused him any harm, we affirm.

## I.

This case comes to us on appeal from the grant of summary judgment, so we present the facts "in the light most favorable to [Gabb] and draw all inferences in [Gabb's] favor." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017).

Dr. Coe was the medical director at Lawrence. He first saw Gabb for back pain in January 2014. Coe performed an x-ray, but he did not prescribe medication. When he saw Gabb a month later, Coe confirmed Gabb had pain in his lower back, but he again did not prescribe medication.

In September 2014, Gabb underwent another x-ray. This time, Coe diagnosed Gabb with chronic back pain and prescribed the painkiller Motrin and the muscle-relaxer Robaxin. When Gabb saw Coe again a month later, he told Coe the medications did little. Coe ordered Gabb a back support and changed Gabb's painkiller prescription from Motrin to Naproxen. Later that month, Gabb complained to a nurse the back support and the painkillers were not providing relief. In February 2015, a physician's assistant discontinued Gabb's Naproxen and prescribed Tylenol instead.

In March 2015, Gabb reported to the infirmary with abdominal pain and encountered Nurse Kimmel. Gabb told

Kimmel he had osteoarthritis in his lower back and he believed the Tylenol was causing his stomach pain. He requested a referral to a doctor so he could get a different medication. Because Gabb's reason for seeking treatment was abdominal pain, the only medication Kimmel could have administered pursuant to protocol was an antacid. Kimmel did not refer Gabb to a doctor or give him an antacid, but instead told him "to (1) lower his dose of Tylenol; (2) drink plenty of fluids and eat properly; (3) plan on attending his follow-up appointment with the physician's assistant in June; and (4) come back to the infirmary if his symptoms worsened."

In early April 2015, Gabb reported to the infirmary again complaining of abdominal pain he believed was caused by the Tylenol. Gabb testified in his deposition that as he came to the room, Kimmel "immediately notified [him] that she was not going to refer [him] to any physician because [he] was not in pain." Gabb says he tried to tell Kimmel about his back pain, but "she verbally abused" and swore at him. She did not refer Gabb to a physician or consult with one concerning an appropriate course of treatment.

At the end of April, Gabb reported to the infirmary for abdominal pain a third time. On this occasion, because he had reported more than twice with the same complaint, he received a referral to Dr. Coe. When he saw Coe a week later, Coe re-prescribed Naproxen, prescribed Vitamin D (which Coe believed could help with muscle spasms and tightness), and tightened Gabb's back support. Coe told Gabb better treatment was available, but Wexford would not pay for it.

Coe saw Gabb again in the summer of 2015. Gabb complained the Naproxen was not working. Coe tightened Gabb's

back brace, demonstrated therapy exercises that could reduce the pain, and suggested Gabb exercise.

In August 2015, a physician's assistant saw Gabb. The physician's assistant reported Gabb's pain was increasing and he suffered from a decreased range of motion. Gabb also had a slower gait and reported tingling in his toes. The physician's assistant prescribed Mobic, an anti-inflammatory drug.

In September 2015, Coe saw Gabb again. Gabb reported the pain was creeping into his middle back from his lower back. Coe discontinued the Mobic and re-prescribed Robaxin. In October 2015, Coe diagnosed Gabb with mild degenerative disk disease and again prescribed Robaxin. He again told Gabb better treatments were available, but he would not refer Gabb because those treatments were too expensive. He also told Gabb that Wexford did not run a pain clinic. Later that month, Coe again prescribed Naproxen. In November 2015, Coe declined a low-bunk request for Gabb. That was the last of Coe's interactions with Gabb. At the time of his deposition in 2017, Gabb testified he was under the care of a different physician and was still prescribed Naproxen, though he was not taking it because it was ineffective.

Gabb sued Coe, Kimmel, and their employer, Wexford, in December 2015, claiming they violated his right to be free from cruel and unusual punishments. The district court referred the case to a magistrate judge. Coe and Kimmel moved for summary judgment. The magistrate judge recommended denying the motion. The judge found evidence showing Gabb suffered from a serious medical condition. The judge concluded a reasonable jury could find Coe was deliberately indifferent to that condition because he continued to prescribe the same medication knowing it was ineffective and made

treatment decisions based on costs, not medical judgment. The judge also concluded a reasonable jury could find Kimmel deliberately indifferent because she was aware of Gabb's back pain, yet refused to provide any medication or refer Gabb to a doctor.

Coe and Kimmel objected to the magistrate judge's conclusions on deliberate indifference. The district court sustained the objections, rejected the magistrate judge's recommendation, and granted the motion for summary judgment. In doing so, the district court catalogued the medical care Coe provided Gabb, concluding it represented a "thorough exercise of medical discretion via numerous treatment strategies," not "dogged persistence." The district court wrote off Coe's comments about the availability of "better treatment" because "[a]ll of the evidence indicates that Dr. Coe's medical treatment of Gabb involved the exercise of medical discretion and was not blatantly inappropriate." The district court also concluded Kimmel had provided constitutionally sufficient care; Gabb was just disagreeing with his treatment plan by requesting a different pain medication. Having concluded there was no underlying constitutional violation, the district court granted summary judgment *sua sponte* to Wexford.

## II.

Gabb appeals the entry of summary judgment for the defendants. We review *de novo*. *Estate of Simpson*, 863 F.3d at 745. We will affirm "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Thus, "summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "We may affirm the grant of summary judgment on any ground supported by the record, as long as the parties adequately presented the issue before the district court and the nonmoving party had an opportunity to contest it." *de Lima Silva v. Dept. of Corrections*, 917 F.3d 546, 558 (7th Cir. 2019).

## A. Coe and Kimmel

Gabb brings this suit under 42 U.S.C. § 1983, which creates a tort remedy for those injured by the deprivation of a constitutional right. *See Roe v. Elyea*, 631 F.3d 843, 863–64 (7th Cir. 2011). In order to succeed in a § 1983 suit, a plaintiff must "establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages." *Id.* at 864.

Gabb claims his medical treatment at Lawrence violated his right to be free from cruel and unusual punishments. The Eighth Amendment to the United States Constitution reads: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Supreme Court tells us the proscription of cruel and unusual punishments creates an "obligation to provide medical care" to prisoners. *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976); *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). This does not mean prisoners are "entitled to receive unqualified access

to healthcare." *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) (internal quotation marks omitted) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Nor does it turn medical malpractice into a constitutional violation. *See Snipes v. DeTella*, 95 F.3d 586, 590–91 (7th Cir. 1996) ("Such matters are questions of tort, not constitutional law."). Instead, the Eighth Amendment, as the Supreme Court has interpreted it, "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain,' including … grossly inadequate medical care." *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014) (citations omitted) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

We use a two-part test to determine if medical care amounted to cruel and unusual punishment. *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc). We ask "whether a plaintiff suffered from an objectively serious medical condition" and "whether the individual defendant was deliberately indifferent to that condition." *Id.* at 728.

In this case, the magistrate judge found evidence to conclude Gabb's back pain qualified as an objectively serious medical condition. Coe and Kimmel did not object to that finding to the district court, and do not argue the point here. *See generally Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If a party fails to object to a magistrate judge's report and recommendation in the district court, in this Circuit he waives appellate review of both factual and legal questions."). So, we turn to deliberate indifference.

In *Petties*, this court, sitting en banc, expounded on the deliberate indifference standard at length. 836 F.3d at 728–31. "[D]eliberate indifference" requires a "subjective state of mind" somewhere between negligence and intention. *Id.* at

728. To show deliberate indifference, "a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Id.*

Gabb charges Coe and Kimmel with deliberate indifference. He maintains Coe was deliberately indifferent by persisting in a course of ineffective treatment despite available alternatives because of cost, and he maintains Kimmel was deliberately indifferent by failing to refer him to a physician or prescribe him pain medication. However, we need not decide whether Coe and Kimmel's conduct rose to the level of deliberate indifference because, even if it did, Gabb has not shown an injury as a result of their actions.

### 1. Coe

Gabb has not presented any evidence by which a jury could reasonably find Gabb experienced harm at Coe's hands. Gabb's entire argument is he suffered because of Coe's refusal to adopt a "better" course of treatment because it was too expensive. But Gabb does not tell us what that specific treatment was or how it would have alleviated his back pain. Gabb testified Coe mentioned surgery and medications (though he cannot remember which ones) and now tells us the "better" treatment could also have been cortisone shots or a referral to a specialist, but he provides no details. And even if he was more specific about the "better" treatments, Gabb has no evidence that *any* course of treatment, be it as simple as referral to a chiropractor or as involved as surgery at the finest hospital in Illinois, would have provided him any relief from his chronic back pain. *See Petties*, 836 F.3d at 733 (concluding the plaintiff could not pursue his claim against the prison doctor for failing "to explore surgery as an option" in part because

the plaintiff "did not produce medical evidence confirming that he would have benefited from surgery").

It is not enough that Coe referred to these other, unknown treatments as "better." "Better" is not synonymous with "good" or "effective." Most people would consider falling from five feet as better than falling from twenty, but neither would likely be good for one's health. Gabb's evidence suggesting his condition declined during the relevant time period—he suffered a reduced range of motion, experienced tingling in his toes, and the pain spread to his middle back—is also insufficient to show harm as a result of Coe's treatment. He has no evidence by which a reasonable jury could conclude Coe's alleged failure to refer him to "better" treatment caused that decline. *See Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) ("[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed." (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995))).

At oral argument, Gabb compared his situation to that of the plaintiff in *Berry v. Peterman*, 604 F.3d 435, 438–39 (7th Cir. 2010), whose persistent complaints of tooth pain were eventually remedied by a root canal. But unlike the plaintiff in *Berry*, Gabb cannot show he suffered from "serious but *avoidable* pain." *Id.* at 438 (emphasis added). There is no evidence Coe's decision to continue conservative forms of treatment in any way negatively affected Gabb's health.

The lack of evidence of what the "better" treatments were and whether they would have been effective would leave a jury entirely to its own imagination about what could have

been done. Such unmitigated speculation cannot defeat summary judgment. *See Austin v. Walgreen Co.*, 885 F.3d 1085, 1089 (7th Cir. 2018).

<u>2. Kimmel</u>

The same evidentiary deficiency dooms Gabb's claim against Kimmel. Gabb faults Kimmel for not referring him to a doctor or giving him a different pain medication when Kimmel saw him in 2015. But even if those omissions amounted to deliberate indifference, there is no evidence they harmed Gabb. Gabb has presented nothing suggesting that if he had seen a doctor or received different medication soon after seeing Kimmel it would have reduced his back pain. *See Langston*, 100 F.3d at 1240. With no evidence that Kimmel's conduct harmed him, he is not entitled to recovery under § 1983.

**B. Wexford**

We must also address the district court's *sua sponte* grant of summary judgment to Wexford. The court's authority to enter judgment *sua sponte* comes from Federal Rule of Civil Procedure 56(f), which provides: "*After giving notice and a reasonable time to respond*, the court may: (1) grant summary judgment for a nonmovant … " (emphasis added).

We emphasize the prefatory phrase because the district court did not give notice of its intent to grant summary judgment for Wexford before it did so. That was error. *Cf. Williams v. City of Chicago*, 733 F.3d 749, 755 (7th Cir. 2013) ("It is not appropriate to grant summary judgment based on facts the moving party did not rely on, at least without giving the losing party advance notice and an opportunity to be heard."). The court should have given the parties notice of some sort before it entered summary judgment for Wexford. *See, e.g.,*

*Baemmert v. Credit One Bank, N.A.*, 271 F. Supp. 3d 1043, 1053, 1054 (W.D. Wis. 2017) (giving the plaintiff one week to explain why the court should not grant summary judgment); *Cook v. Knight (In re Knight)*, 574 B.R. 800, 818 (Bankr. N.D. Ga. 2017) (giving the plaintiff 24 days to show cause why the court should not grant summary judgment).

Nevertheless, that technical error does not compel a remand. Summary judgment for Wexford was clearly appropriate because Gabb has no evidence of harm. A plaintiff can bring a *Monell*-style claim against a private corporation acting under color of state law. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016). To be liable, the corporation must have "maintained an unconstitutional policy or custom." *Perez v. Fenoglio*, 792 F.3d 768, 780 (7th Cir. 2015). That policy or custom must cause the injury that is the basis of the plaintiff's § 1983 claim. *See Woodward v. Correctional Med. Servs. of Ill., Inc.*, 368 F.3d 917, 928 (7th Cir. 2004). Because Gabb cannot show he suffered any injury based on his medical treatment at Lawrence, he cannot show any Wexford policy or custom harmed him. Accordingly, his claim against Wexford is bound to fail. As we know Gabb cannot win, we will not go through the pointless exercise of remanding the case. *See Hassebrock v. Bernhoft*, 815 F.3d 334, 343 n.3 (7th Cir. 2016) (declining to "remand a case for trial when we know the plaintiffs cannot win," calling it "a waste of time, money, and judicial resources").

### III.

The judgment of the district court is AFFIRMED.