In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-2056

JASON J. JEFFERS,

*Petitioner-Appellant*,

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee*.

Appeal from the United States Tax Court.
No. 9791–18 L — **Elizabeth Crewson Paris**, *Judge*.

ARGUED FEBRUARY 10, 2021 — DECIDED MARCH 30, 2021

Before MANION, KANNE, and ROVNER, *Circuit Judges*.

MANION, *Circuit Judge*. Jason Jeffers owes several thousand dollars in federal taxes. He has incessantly challenged his tax liability at every turn—except the one operative point in time: after receiving notice of a federal tax lien on his property. The IRS seeks to levy on Jeffers's property in satisfaction of his debt. Instead of contesting the propriety of the levy or offering collection alternatives, he asks this Court to find he is owed tax refunds. Jeffers covertly disguises several arguments related to his underlying tax liability, attempting to breach our

jurisdictional boundaries through the use of collection and levy language. We restrict our review to issues properly before the Court. Because Jeffers had a prior opportunity to contest his underlying tax liability, we affirm.

## I. Background

2008 and 2009 Tax Liability[1]

In filing his 2008 taxes, Jeffers underreported his income. His tax return claimed a refund for some $11,000, which was paid. But Jeffers was audited, and as a result, the IRS notified him of the discrepancy between his income and his 2008 tax return.[2] Consequently, he was assessed additional taxes and penalties a year later. Approximately six years after that, he filed an amended 2008 tax return seeking an additional tax refund for $1,620.

Jeffers filed his 2009 tax return late. He self-reported he owed more than $12,000 in taxes without including any payment. The IRS accepted the late filing. It assessed the unpaid amount plus interest and penalties. Jeffers and the IRS entered into an installment agreement, but it was terminated

---

[1] While the record contains information on the 2007 through 2010 tax periods, only facts relating to the 2008 and 2009 tax periods are relevant to this appeal. Jeffers resolved issues related to his 2007 tax return, and he conceded liability with respect to the 2010 tax period in his motion to reconsider the tax court's decision.

[2] Because there was no statutory notice of deficiency in the record, the tax court assumed, in Jeffers's favor, that he did not receive a notice of deficiency. We assume the same. *See generally* I.R.C. § 7482(a)(1) (explaining that courts of appeal review the tax court's decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury").

when he failed to make any payments. In February 2017, he filed an amended return claiming he was owed a $500 refund.

Notice of Federal Tax Lien and Levy

On September 20, 2012, the IRS mailed Jeffers proper notice of the tax lien on his property. The lien attached with respect to unpaid debt from both the 2008 and 2009 tax periods. *See generally* I.R.C. §§ 6320(a), 6321. The notice informed Jeffers of his right to a Collection Due Process ("CDP") hearing,[3] but he did not request one.

On February 23, 2017, after the amended tax returns were submitted but before they were processed, the IRS notified Jeffers of its intent to levy on his property. *See generally* I.R.C. § 6330(a) (requirement of notice before levy). The notice informed Jeffers of his right to a CDP hearing. This time, Jeffers timely requested a hearing. The request stated Jeffers had "incurred significant rental real estate losses" for tax years 2008 and 2009, so he had submitted amended returns that were "awaiting adjustment." Consequently, he argued, "[c]ollection activities such as levies are premature in these facts and circumstances."

Decision of the Settlement Officer

Jeffers's case was assigned to Officer Morgan, an IRS Office of Appeals settlement officer. Jeffers contested his underlying liability,[4] rather than the levy. Officer Morgan found the

---

[3] For a helpful overview of the CDP framework, see *Our Country Home Enterprises, Inc. v. Commissioner*, 855 F.3d 773, 777–80 (7th Cir. 2017), and *Gyorgy v. Commissioner*, 779 F.3d 466, 472 (7th Cir. 2015).

[4] Underlying tax liability is not specifically defined in the Code. Basically, it means "the amounts that the Commissioner assessed for a particular tax period," including "an amount assessed following the issuance of

liability issue was precluded, since Jeffers had a prior opportunity to raise the issue when the IRS gave notice of the federal tax lien in September 2012. Jeffers requested to speak with the appeals team manager. The team manager confirmed that the liability issue was precluded. The team manager told Jeffers the Office of Appeals would consider an installment agreement, but Jeffers responded he could not afford the proposed agreement. No agreement was made on an alternative to collection. The Office of Appeals issued a notice of determination sustaining the proposed levy action. Jeffers properly contested the notice of determination by filing a petition in tax court.

Tax Court Decision

On petition for review of the notice of determination, Jeffers argued the settlement officer abused his discretion in failing to allow Jeffers to contest his underlying tax liability and for failing to consider his amended tax returns. Jeffers asked the tax court for tax refunds. The Commissioner of Internal Revenue moved for summary judgment. The tax court granted the Commissioner's motion. It found Jeffers could not challenge his underlying tax liability because he received notice of the federal tax lien and had the opportunity to dispute his tax liability then. The court also found the settlement officer was not obligated to consider the amended tax returns because under *Badaracco v. Commissioner*, there is no right to have one's amended return considered. 464 U.S. 386, 393 (1984). The tax court found there was no abuse of discretion and ordered that the Commissioner may proceed with

a notice of deficiency," a self-assessed debt, or a combination. *Montgomery v. Comm'r*, 122 T.C. 1, 11–12 (2004).

collection. Jeffers filed a motion to reconsider which the tax court denied. He timely appealed to this Court.

## II. Discussion

### A.     Jurisdiction and Standard of Review

We have jurisdiction to review the tax court's decision under § 7482(a)(1) of the Internal Revenue Code. We review the tax court's grant of summary judgment *de novo*. *See Musa v. Comm'r*, 854 F.3d 934, 938 (7th Cir. 2017); *see also* I.R.C. § 7482(a)(1). When a taxpayer's underlying tax liability is not a proper issue in the case, this Court reviews the Office of Appeals's administrative determinations for abuse of discretion. *Kindred v. Comm'r*, 454 F.3d 688, 694 (7th Cir. 2006).

### B.     Challenge to Underlying Tax Liability

Jeffers first argues summary judgment should not have been granted because material facts were in dispute. He forfeited this argument. *See generally* Fed. R. App. P. 28(a)(8)(A) (requiring contentions, reasons, and authorities). In a single paragraph, Jeffers fails to make a meaningful argument. He simply states the tax court ignored numerous disputes of material fact and cites more than 200 pages of record. We will not scour the record in an attempt to formulate a cogent argument when Jeffers has presented none. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Further, it is clear from the record and the parties' arguments that no *material* fact is in dispute.

While Jeffers raises unclear and improper[5] arguments, we focus on the main issue, as required by our jurisdictional limitations. *See* I.R.C. § 7482 (explaining this Court reviews the tax court's decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury"); *see also Our Country Home*, 855 F.3d at 780 ("[T]he tax court's review is limited to the issues raised in the CDP hearing."). We must decide whether Jeffers was properly precluded from challenging his underlying tax liability in the CDP hearing.

Under § 6330 of the Internal Revenue Code, a taxpayer can raise challenges to "the existence or amount of the underlying tax liability for any tax period," if the taxpayer (1) "did not receive any statutory notice of deficiency for such tax liability" or (2) "did not otherwise have an opportunity to dispute such tax liability." I.R.C. § 6330(c)(2)(B). A deficiency is the amount by which income tax imposed by the Code exceeds any surplus of (1) the amount the taxpayer stated on his or her tax return plus previously assessed deficiencies minus (2) the amount of any rebates. *Id.* § 6211(a). Once the Secretary of Treasury determines that there is a deficiency, "he is authorized to send notice of such deficiency to the taxpayer." *Id.* § 6212(a).

We, like the tax court, assume Jeffers did not receive a notice of deficiency for the 2008 tax period because there is insufficient evidence of such notice in the record. The parties

---

[5] Jeffers asks this Court to investigate a bare allegation of misconduct by the Commissioner's Chief Counsel. He also makes a series of arguments related to his underlying liability, asking this Court to order refunds issued.

agree that Jeffers did not receive any notice of deficiency for the 2009 tax period because he self-reported a balance due. Thus, the issue is whether he "otherwise" had an opportunity to raise the issue. *Id.* § 6330(c)(2)(B).

The Treasury Regulations interpret § 6330 and clarify what constitutes an "opportunity." The relevant provision states:

> If the taxpayer previously received a CDP No-tice under section 6320 [the provision for notice of a federal lien] with respect to the same tax and tax period and did not request a CDP hear-ing with respect to that earlier CDP Notice, the taxpayer had a prior opportunity to dispute the existence or amount of underlying tax liability.

26 C.F.R. § 301.6330–1(e)(3)(Q&A-E7). A taxpayer need not have pursued an opportunity for it to act as a bar to future challenges of underlying tax liability. *Our Country Home*, 855 F.3d at 788 ("Section 6330(c)(2)(B) speaks to *opportunities* to dispute liability, not opportunities that a taxpayer actually ex-ercised.").

Jeffers received prior § 6320 notice on September 20, 2012, when the IRS notified him of a federal lien on his property. He does not contest receipt of this notice. Jeffers did not ask for a CDP hearing at that point,[6] thereby forfeiting his chance

---

[6] Counsel stated Jeffers could not have requested a CDP hearing at that point because he was conducting a preliminary inquiry into the facts of the case in 2012. We fail to see why doing so would prevent the request of a CDP hearing that could be scheduled after further inquiry. *See Our Country Home*, 855 F.3d at 780 (explaining the procedural informality of CDP proceedings).

to dispute liability in the CDP hearing he later requested after receiving the notice of intent to levy.

In response, Jeffers argues the regulation is invalid.[7] However, we afford "considerable weight" to an agency's "construction of a statutory scheme it is entrusted to administer." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). Analysis under *Chevron* is a two-step process. "First, we determine whether the statute is silent or ambiguous on the question at issue … ." *Brumfield v. City of Chicago*, 735 F.3d 619, 626 (7th Cir. 2013). Second, if the statute is either silent or ambiguous, we "determine whether the agency has promulgated a reasonable interpretation of the statute; if so, we defer to that interpretation." *Id.*

First, the statute itself does not define "opportunity." *See generally* I.R.C. § 7701 (definitions). We have recognized the statute is ambiguous concerning what types of proceedings constitute an "opportunity." *Our Country Home*, 855 F.3d at 785–86 (examining whether "opportunity" includes both judicial and administrative opportunities). Further, nothing in the statute as a whole addresses whether a prior CDP notice constitutes an "opportunity," or whether the definition of an opportunity includes only such opportunities as are pursued. Thus, we continue to find § 6330(c)(2)(B) is ambiguous.

Second, we consider whether the regulation is a reasonable interpretation of the statute. An interpretation need not be the only interpretation, or even deemed the "*most* reasonable by the courts." *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009). The interpretation set forth by the regulation has

---

[7] His precise argument on the point is unclear, despite his citation to the record and legal authority (albeit non-binding legal authority).

already been advanced by this Court. *See Our Country Home*, 855 F.3d at 788 ("Section 6330(c)(2)(B) speaks to *opportunities* to dispute liability, not opportunities that a taxpayer actually exercised.").

This interpretation is sensible considering the purposes of CDP hearings. In essence, Congress enacted the Internal Revenue Service Restructuring and Reform Act of 1998 as a procedural protection for taxpayers to oppose IRS *collection* actions, with mere incidental review of underlying liability in specifically enumerated instances. *Id.* at 779; *see also Kindred*, 454 F.3d at 695. The regulation reasonably interprets an "opportunity" in light of this purpose by precluding challenges to underlying liability when a taxpayer received a CDP notice for the same tax and tax period even if the taxpayer did not request a CDP hearing because the operative point is that the taxpayer could have done so. *Cf. Opportunity to be Heard*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The *chance* to appear in a court or other tribunal and present evidence and argument before being deprived of a right by governmental authority." (emphasis added)). For these reasons, the regulation reasonably interprets the statute and was properly applied.

Jeffers's principal argument in attacking the regulation's validity is that it conflicts with § 6330(c)(4)(A).[8] His interpretation of the various statutory provisions construes the sections in a strained attempt to force them to conflict.

---

[8] Jeffers also makes a two-sentence allegation the regulation conflicts with § 6402, the section concerning IRS authority to make tax refunds or credits. *See generally* I.R.C. § 6402(a). Not only is this bare allegation insufficient, but at its core, it is simply an attempt to convince this Court to examine the merits of his refund claim. We decline.

Jeffers claims the regulation "directly contradicts" the statute, because unlike issues precluded by § 6330(c)(4)(A), Jeffers did not participate in an earlier hearing. There is no tension between § 6330(c)(2)(B), as interpreted by the regulation, and § 6330(c)(4)(A). Both concern matters that may be considered at a CDP hearing. I.R.C. § 6330(c). The former is narrower than the latter; it concerns only whether underlying liability can be raised. *Id.* § 6330(c)(2)(B). The latter precludes any issue that "was raised and considered at a previous hearing under section 6320 or in any other previous administrative or judicial proceeding" in which the taxpayer meaningfully participated. *Id.* § 6330(c)(4)(A). As our sister circuit explained:

> Section 6330(c)(2)(B) and (c)(4) share much in common. Both provisions incorporate the principles of claim preclusion and issue preclusion, respectively, into the CDP context. They are motivated by the same idea: CDP hearings do not afford taxpayers a chance to relitigate questions that have already been settled or should have been. Subsection (c)(2)(B) concerns liability challenges that a taxpayer had a chance to raise, while (c)(4) applies to all issues that were actually disputed.

*Iames v. Comm'r*, 850 F.3d 160, 167 (4th Cir. 2017). While there is some overlap between the provisions, they work in harmony to ensure CDP hearings are conducted efficiently and can predominantly focus on the collection action rather than subsidiary issues. The issue of liability should only be raised when a taxpayer "would otherwise fall through the cracks." *Id.* at 166. For these reasons, the Commissioner was entitled to

judgment as a matter of law and summary judgment was properly granted.

Because the issue of underlying liability was not properly before the tax court, we do not address Jeffers's arguments he is entitled to a $1,620 refund for the 2008 tax year or a $500 refund for the 2009 tax year. *See Our Country Home*, 855 F.3d at 780 (explaining the tax court cannot consider precluded challenges to liability).

## C.     Sustaining the Levy

It is also worth noting there was no abuse of discretion in sustaining the levy. *Kindred*, 454 F.3d at 694. Jeffers did not challenge the appropriateness of the collection action or offer any collection alternatives. Instead, he continuously insisted upon arguing about his underlying liability. The only argument he makes now about collection alternatives is without merit: he contends his refund claims are a suitable collection alternative. Regardless of the language he uses, refund claims are not collection alternatives. *See* I.R.C. § 6330(c)(2)(A)(iii) (explaining collection alternatives include "the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise"). Refunds concern underlying liability. For the reasons already stated, he was properly precluded from raising the issue.

## III.  Conclusion

Accordingly, we AFFIRM the tax court's grant of summary judgment.