NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 18, 2021[*]
Decided November 18, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 21-2049

| | |
|---|---|
| NICHOLAS STEINKE, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 17-cv-0656-bhl |
| GERALD KRUEGER, *et al.*, *Defendants-Appellees*. | Brett H. Ludwig, *Judge*. |

**O R D E R**

Nicholas Steinke, a Wisconsin inmate, appeals the judgment in favor of the correctional officers who refused his requests for a bottom bunk and a lower-floor cell

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

despite his history of seizures and injuries from a fall. The district court granted the officers' motion for summary judgment on Steinke's claims under the Eighth Amendment, concluding that the officers were not deliberately indifferent because they are non-medical staff and there were no medical orders for Steinke to have a bottom bunk or first-floor cell. We agree with this reasoning and therefore affirm the judgment.

We relate the facts in the light most favorable to Steinke. See *Hackett v. City of South Bend*, 956 F.3d 504, 507 (7th Cir. 2020). When Steinke completed the intake process at Dodge Correctional Institution in Waupun, Wisconsin in 2017, he reported that he had a history of seizures but had not experienced a seizure or taken anti-seizure medicines in the past year. An inmate's medical restrictions are recorded in his profile in the Wisconsin Integrated Corrections System, a central database for the Wisconsin Department of Corrections. Steinke did not have a bottom-bunk restriction in the database when he arrived at Dodge, and the nurse who completed Steinke's intake exam did not restrict him to a lower bunk based on his report.

When Steinke was assigned an upper bunk, he told a correctional officer, Gerald Krueger, that he needed a lower bunk because of his seizures. Krueger checked Steinke's profile in the database and saw that he did not have a bottom-bunk order. He told Steinke to fill out a health-services request because only a medical provider could approve a medically based bottom-bunk restriction. Another correctional officer, Brenda Chapman, overheard this conversation and told Steinke to put his mattress on the floor until they could resolve the issue. He did not. Steinke then requested a bunk reassignment from Sergeant Ricky Breselow. Krueger explained that Steinke did not have a medical order for a bottom bunk and could not be reassigned.

Later that afternoon, Steinke fell off his bunk and claimed that he had suffered a seizure. He was taken to the emergency room where he was diagnosed with bruises and a strained neck and released the same day. Back at the prison, Steinke was reassigned to a bottom bunk in a cell on the second floor of his unit. Steinke says that he returned from the hospital in a wheelchair and neck brace (no one from the prison remembers this), and he told a correctional officer, Alyssa Maltby, and a sergeant, Linden Hannon, that he needed a cell on the first floor so that he would not have to take the stairs. But because Steinke did not have a medical restriction for first-floor housing, they denied his request, and Steinke experienced pain when he climbed the stairs up to his cell.

In his lawsuit under 42 U.S.C. § 1983, Steinke asserted that Krueger, Chapman, and Breselow were deliberately indifferent to his need for the bottom-bunk bed, and

that Maltby and Hannon were deliberately indifferent to his need for a first-floor cell after his fall, all in violation of his rights under the Eighth Amendment. This case was consolidated with another that Steinke had brought against officials at the same prison for their alleged failure to provide medical care when he had a seizure and fell in 2014. The district court had recruited counsel for Steinke in that case, and counsel took on this one, too. Eventually, the defendants moved for summary judgment on all claims.

As relevant to this appeal, the district court granted the motion with respect to the claims arising from the 2017 seizure. It explained that the defendants were entitled to rely upon medical professionals and that, without a medical order, they lacked authority to reassign inmates to new bunks or floors. Thus, they did not deny Steinke's requests out of deliberate indifference to his health and safety.

On appeal, Steinke appears to argue that he presented sufficient evidence that Krueger, Chapman, and Breselow acted with deliberate indifference when they did not reassign him to a lower bunk or call the prison's health-services unit to question the information in the prison database. But non-medical prison officials are entitled to rely upon medical professionals about the medical treatment of prisoners, and the nurse who did Steinke's intake did not restrict him. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019), *cert. denied,* 140 S. Ct. 50 (2019). And, although they could not grant Steinke's request without a documented medical restriction, the officers tried to help: Krueger consulted the database to see if a restriction existed and advised Steinke how to obtain one, and Chapman told Steinke that he could place his mattress on the floor for the time being. Sergeant Breselow knew that Krueger had searched Steinke's profile and found no medical restrictions, so he too lacked a reason for moving Krueger. On these facts, no reasonable juror could find that these officers recklessly disregarded Steinke's serious health needs, as would be required to show deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Jones v. Mathews*, 2 F.4th 607, 612–13 (7th Cir. 2021).

Steinke also asserts that he was entitled to a first-floor cell when he returned from the hospital, and Maltby and Hannon displayed deliberate indifference by refusing to reassign him to one. But, again, Steinke's medical records do not reflect any restrictions or special accommodations recommended by the hospital staff upon his discharge. The correctional officers were entitled to defer to medical personnel. *Giles*, 914 F.3d at 1049. And Steinke's injuries—bruises and a strained neck—did not create a serious medical need. See *Pinkston v. Madry*, 440 F.3d 879, 886, 891 (7th Cir. 2006) (bruising, split lip, and swollen cheek not objectively serious medical need). Further, Steinke's evidence showed nothing more than that he felt pain ascending the stairs; he

did not submit evidence that the movement exacerbated his injuries, delayed healing, or did anything but cause fleeting discomfort. See *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020); *Gabb v. Wexford Health Sources Inc.*, 945 F.3d 1027, 1034 (7th Cir. 2019).

None of Steinke's other arguments has merit.

AFFIRMED