**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 18, 2021[*]
Decided November 23, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 20-2891

| | |
|---|---|
| DARREN ARMSTEAD, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Indiana, South Bend Division. |
| *v.* | |
| | No. 3:18-CV-541-RLM-MGG |
| NOE J. MARANDET and KIMBERLY MYERS, | Robert L. Miller, Jr., |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Darren Armstead fell from an upper bunk in prison, and about two months after his fall medical staff discovered a fracture, which they treated. Armstead sued, claiming that prison staff were deliberately indifferent to his fracture. The district court entered

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

summary judgment for the defendants. Because no reasonable jury could find that the defendants deliberately ignored Armstead's medical needs, we affirm.

We present the facts in the light most favorable to Armstead. *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 241 (7th Cir. 2018). In early 2017, Armstead entered the Miami Correctional Facility, a state prison in Indiana, where he was assigned an upper bunk. Intake forms noted that he has diabetes, hypertension, and neuropathy. In April, he fell; medical staff found him on his cell floor, on his back and unconscious. Kimberly Myers, a nurse practitioner, quickly admitted him to the infirmary, and Dr. Noe Marandet examined him the next day. Among other things, Armstead complained of pain in his right hand. Marandet examined the hand and found it "unremarkable." Marandet stated in an affidavit that an X-ray was not clinically necessary at that time based on his examination of the hand and the observations noted in the medical records. Those records report that, while in the infirmary, Armstead could play chess without assistance or pain. Armstead states that, nonetheless, Marandet promised him that he would receive an X-ray of his right hand. In less than a week, Marandet discharged Armstead from the infirmary (without the X-ray) and scheduled a follow-up appointment one week later. At that time, Armstead complained of pain, but not in his right hand. Marandet switched Armstead's medication to relieve the pain.

Events two months later prompted medical staff to examine Armstead's right hand again. During a visit with a nurse in mid-June, Armstead complained of pain in that hand, and a nurse noted an "enlarged area" on his hand. Based on that assessment, Myers saw Armstead two weeks later, and she scheduled an X-ray for the next day. It showed that Armstead had, at some point, fractured his right hand in two places. Both fractures were in "anatomical alignment." As a result, Myers determined Armstead needed only a splint and monitoring, which she provided.

Over the next several months, Armstead received more medical care for his right hand. Four additional X-rays showed that his bones remained in proper alignment and were healing, eventually making a near-full recovery. Additionally, medical staff adjusted the type and dosage of painkillers he took and sent him to physical therapy. They did not set his hand in a cast, perform any surgery, or refer him to an orthopedic specialist; they had decided that none of these options was medically necessary. Despite these efforts, Armstead reported some pain and decreased mobility of his hand.

Armstead sued Marandet, Myers, and others for allegedly violating his Eighth Amendment rights. He contends that they were deliberately indifferent in three respects. First, he argues that Marandet and Myers recklessly misdiagnosed and

mistreated his right hand immediately after his fall. Second, he contends that once the defendants had diagnosed his fractured hand two months later, they deliberately ignored his need for certain treatment. Third, he asserts that when he entered the prison, he was wrongly assigned an upper bunk, though he does not say by whom. (He believes that the conditions noted on his intake forms should have warranted a lower-bunk assignment.) The district court screened the complaint, see 28 U.S.C. § 1915A, and dismissed all claims except those against Marandet and Myers regarding the treatment of his hand. Both sides moved for summary judgment, and the district court granted the defendants' motion. It concluded that, while Armstead's injury was "objectively serious," no reasonable jury could find that the defendants were deliberately indifferent to it.

On appeal, Armstead maintains that Marandet and Myers deliberately ignored Armstead's need for medical care for his right hand. The defendants concede that a fractured right hand is "an objectively serious medical condition," so in applying the Eighth Amendment we ask only whether either defendant was deliberately indifferent to such an injury. See *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc).

Armstead argues that he supplied evidence from which a jury could infer that, after his fall, the defendants recklessly ignored his right hand and culpably delayed needed treatment. We disagree with him. For three reasons, no evidence suggests that either defendant ignored an apparent fracture. First, no evidence about the appearance of Armstead's right hand after the fall contradicts Marandet's opinion that it was "unremarkable." Second, Marandet's opinion is corroborated by other observations in the medical records, namely that Armstead could manipulate chess pieces without pain. Third, the opinion is also consistent with Armstead's behavior at his follow-up appointment one week later, when he did not complain of right-hand pain. By contrast, two months later, when Armstead's complaint about pain in his right hand was accompanied by a visible, enlarged area there, medical staff X-rayed and treated that hand. From these facts, a reasonable factfinder would be compelled to find that the defendants properly used their professional judgment when deciding against ordering an X-ray right after Armstead's fall. See *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019). That decision is thus entitled to deference as "a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

Armstead offers two responses, but neither persuades us. First, he argues that Marandet promised to X-ray his hand during his stay at the infirmary. Although Marandet attests that he has no recollection of such a promise, this dispute is not

material. The issue is not whether Marandet promised an X-ray, but whether he knew of a substantial risk, immediately after the fall, that Armstead's hand had been fractured. See *Balsewicz v. Pawlyk*, 963 F.3d 650, 655 (7th Cir. 2020). But as just discussed, Armstead's symptoms right after the fall gave medical providers no reason to perceive a substantial risk of a fractured right hand.

Second, Armstead argues that a delay in treating known pain can support a deliberate-indifference claim, but no such delay occurred here. He relies on *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008), and *Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007). In those cases, prison staff who knew that an inmate was in pain delayed the inmate's access to medical help. Armstead has no evidence that the defendants prolonged his pain despite knowing about it. See *Petties*, 836 F.3d at 730–31. To the contrary, Armstead received pain medicine shortly after the fall, and when his later reports of pain in his right hand were accompanied by symptoms suggesting a fracture, Myers acted reasonably. She ordered an X-ray, splinted Armstead's hand, ordered follow-up X-rays to ensure proper healing, sent him to physical therapy, and prescribed more pain medication—which was adjusted as needed. Armstead replies that this treatment did not eliminate his pain. But the Eighth Amendment does not guarantee complete pain relief or recovery, just the absence of reckless care. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996); see *Orlowski v. Milwaukee Cnty.*, 872 F.3d 417, 424 (7th Cir. 2017).

Armstead next contends that once the defendants knew that he had a fractured hand, they deliberately ignored his need for a cast, surgery, and an orthopedic specialist. But Armstead is not entitled to specific treatment, only constitutionally adequate care. See *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019). He has not furnished evidence suggesting that a minimally competent professional would have ordered his preferred treatment. See *id.*; *Petties*, 836 F.3d at 730. Moreover, he has not even presented evidence, as he must, that his preferred alternatives would have improved his medical outcome. See *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033–34 (7th Cir. 2019).

Turning next to his upper-bunk assignment, Armstead argues that it reflects deliberate indifference to his medical needs. In its screening order, the district court dismissed this claim, notifying Armstead that he had failed to allege "that any of the defendants were involved with ... assigning Mr. Armstead to a top bunk." We view this order to be an invitation from the district court to Armstead "to lay out details that enable the defendants to respond intelligently," as Federal Rule of Civil Procedure 12(e)

permits. *Chapman v. Yellow Cab Cooperative*, 875 F.3d 846, 849 (7th Cir. 2017). District courts generally allow plaintiffs at least one chance to patch up defects in a complaint. See *Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911, 919 (7th Cir. 2020). But Armstead disregarded that invitation; he never asked for leave to amend his complaint to cure this observed defect. On appeal, he now wants to do so and allege that Marandet and Myers were involved. But this "belated compliance" with the district court's invitation is too late. See *Chapman*, 875 F.3d at 849.

Finally, Armstead argues that the district court was biased against him. His only evidence is that the district court ruled against him several times. This is insufficient. See *Liteky v. United States*, 510 U.S. 540, 555 (1994).

We have considered Armstead's other arguments, but none has merit.

AFFIRMED