NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 9, 2022[*]
Decided November 10, 2022

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 22-1069

| | |
|---|---|
| ROBERT L. TATUM, <br>     *Plaintiff-Appellant,* <br><br> *v.* <br><br> EARNELL LUCAS, et al., <br>     *Defendants-Appellees.* | Appeal from the United States District Court for the Eastern District of Wisconsin. <br><br> No. 11-C-1131 <br><br> Lynn Adelman, <br> *Judge.* |

**O R D E R**

Robert Tatum, now serving a criminal sentence in Wisconsin, filed an expansive complaint against dozens of Milwaukee County officials, asserting that each violated

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

his rights in some way while he was a pretrial detainee. He appeals numerous rulings from this nearly 11-year-long litigation. Seeing no error in any of them, we affirm.

**I.**

While awaiting trial on homicide charges from June 2010 to June 2011, Tatum was held at the Milwaukee County Jail. He amassed 85 disciplinary violations while there and believes that all or many were based on religious persecution. After his initial criminal conviction and transfer to the custody of the Wisconsin Department of Corrections,[1] he filed a complaint asserting at least 25 claims—ranging from excessive force to inadequate medical care to the lack of a religious diet—against over 30 individuals who worked for Milwaukee County.

What came next is difficult to follow: a decade's worth of litigation before two district judges, involving screening, three motions for summary judgment, and a jury trial—in addition to contentious discovery and scores of motions for reconsideration, judicial recusal, and sanctions. At screening, Judge Randa (who presided for the first five years) dismissed a handful of the claims. *See* 28 U.S.C. § 1915A. But he allowed Tatum to proceed with the rest all in one lawsuit. The judge accepted Tatum's theory that his claims were all related because each defendant's unlawful conduct—in otherwise unrelated incidents—stemmed from an alleged conspiracy to "retaliate" against him because of his membership in the Nation of Islam.

In the next two years, the defendants filed two collective motions for summary judgment. In its orders partially granting and partially denying the motions, the district court did not specify which claims survived against which defendants. It stated that broad categories of claims could continue. For example, the court allowed Tatum to proceed on his "deliberate indifference to medical needs" claims—without making clear which of many incidents and defendants those claims involved.

As the November 2015 trial date loomed, the defendants asked the court to clarify which claims, and against which defendants, they should be prepared to address

---

[1] In 2017 this court reversed the denial of Tatum's petition for a writ of habeas corpus under 28 U.S.C. § 2254(d)(1), concluding that the denial of his motion to represent himself in his criminal trial was contrary to, and an unreasonable application of, established Supreme Court precedent. *Tatum v. Foster*, 847 F.3d 459 (7th Cir. 2017). Tatum was later tried again and convicted.

at trial. They also asked the court to dismiss (and remove from the case caption) the defendants against whom no claims remained. The court clarified broadly that Tatum could not litigate certain claims at trial, but it declined to alter the list of defendants. Then it moved the trial date to May 2016.

Around that time, the case was reassigned to Judge Adelman. After a status hearing in May 2018 (in the interim, pretrial proceedings before a magistrate judge had stalled), the court noted in a minute entry that the case was in an "undesirable state" because it was unclear "which claims against which parties [were] supposed to proceed to trial." The court granted the defendants' request to file a motion "that will serve as a vehicle through which the court can identify the claims that should proceed to trial." The defendants then moved for summary judgment and for reconsideration of the initial screening orders.

The court declined to reconsider the screening orders—even though it determined that the case involved unrelated claims that were improperly joined— because many claims had already been adjudicated, and the statute of limitations would preclude Tatum from refiling others. Instead, the court identified the claims that had survived previous proceedings and considered each on the merits, entering judgment for defendants on all but four claims.

Because those claims were unrelated for purposes of Federal Rule of Civil Procedure 20(a)(2), the court gave notice that it would sever them under Rule 21. And the court allowed Tatum to choose which claim would remain under the primary case number and proceed to trial first. When Tatum's response did not identify a claim—he later attributed this omission to a missing page—the court picked a claim. It retained in this case Tatum's claim that Earnell Lucas, Tricia Carlson, and Melissa Elliot—all jail employees—violated his procedural due process rights by refusing to allow him live witnesses during three disciplinary hearings. The other claims migrated to separate cases, all of which have been resolved.

In 2022, Tatum took the due-process claims to trial, representing himself although the court had recruited counsel for him after the summary judgment proceedings. The jury returned a verdict in favor of the defendants.

## II.

On appeal, Tatum challenges myriad decisions made during his decade-long litigation. We address only the arguments pertaining to the due-process claims he lost at trial and the claims resolved before severance. The proper place to raise arguments related to the severed claims was in the severed cases.

## A.

Tatum first contests the district court's entry of summary judgment for the defendants on a series of claims in 2013, 2014, and 2019.[2] We review the decisions de novo, considering the evidence in the light most favorable to Tatum. *See Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022).

## 1.

As for the 2013 summary judgment decision, Tatum contests the district court's ruling for the defendants on his claims that he was deprived of meaningful access to the courts during his (first) criminal trial. Tatum alleged that guards confiscated a manual on self-representation and did not provide him with forms needed to file an appeal. The court concluded, however, that he did not lack access to the courts because he was represented by counsel at the time. *See Campbell v. Clarke*, 481 F.3d 967, 968 (7th Cir. 2007) (citing *Bounds v. Smith*, 430 U.S. 817, 830–32 (1977)). Tatum cites a footnote from *Casteel v. Pieschek* to argue otherwise. 3 F.3d 1050, 1054 n.4 (7th Cir. 1993). But there, we merely clarified that a litigant lacks meaningful access to the courts if his criminal defense attorney is "unable or unwilling" to assist with habeas or civil filings. *Id.* Here,

---

[2] As an initial matter, Tatum argues that each time the defendants moved for summary judgment, the district court should have considered his response brief as a cross-motion for summary judgment and found in his favor on all claims. True, courts may grant summary judgment for the non-moving party if all the requirements for a judgment are met. *See* FED. R. CIV. P. 56(f)(1); *Jones v. Union Pac. R. Co.*, 302 F.3d 735, 740 (7th Cir. 2002). But Tatum's argument fails because no authority *requires* courts to do so.

Tatum alleged only that he lacked the resources to file pro se motions in the criminal case, in which he was represented. *See Campbell*, 481 F.3d at 967.

Tatum also challenges the court's decision on his claim that guards retaliated against him because he requested a vegetarian diet for religious reasons. According to Tatum, the defendants submitted "no evidence" contradicting his attestations that they disciplined him because he requested a religious diet. But, as the district court explained, the defendants attested that they disciplined Tatum because he broke the prison's rules, not because of his religion. And Tatum admitted to breaking those rules. Thus, his statement about their subjective intent was speculation unfit to stave off summary judgment. Tatum's cursory argument fails to engage with the reason the court ruled in the defendants' favor and is therefore waived. *See Klein v. O'Brien*, 884 F.3d 754, 757 (7th Cir. 2018).

**2.**

As for the 2014 decision, Tatum challenges the district court's ruling on his state-law privacy claim, which was based on an alleged strip search. Again, Tatum's argument fails because he does not engage with the reasons he lost. *See Klein*, 884 F.3d 754, 757. The district court determined that the defendants were covered by Wisconsin's governmental tort immunity statute, WIS. STAT. § 893.80(4), because their actions involved the exercise of their discretion and judgment, *see Lodl v. Progressive N. Ins. Co.*, 646 N.W.2d 314, 320 (Wis. 2002). Tatum says nothing to cast doubt on that conclusion.

**3.**

With respect to the 2019 decision on the defendants' third and final summary judgment motion, Tatum argues that Judge Adelman contravened the law of the case when he revisited several of Judge Randa's rulings. (In actuality, Judge Randa never considered many of the claims on which Judge Adelman later ruled.) But a district court may always reconsider interlocutory rulings under Federal Rule of Civil Procedure 54(b). *See Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012). And the law-of-the-case doctrine allows a second district judge to reconsider the rulings of a first judge when those rulings were incorrect. *See Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 902 (7th Cir. 2010). We thus turn to whether Judge Adleman's rulings were correct.

Tatum first argues that Judge Adelman erred by ruling for the defendants on his claim under the Religious Land Use and Institutionalized Persons Act regarding the

need for a vegetarian diet. Tatum attested that he once saw meat in the nutraloaf he was served (exclusively) when in disciplinary housing. *See Prude v. Clarke*, 675 F.3d 732, 733 (7th Cir. 2012). He argues that summary judgment was improper because there is a genuine dispute over whether the nutraloaf contained meat. But he ignores the district court's conclusion that the jail provided Tatum a vegetarian diet and that even if Tatum somehow received meat one time, this was not a "substantial burden" on the exercise of his religion under the Act. *See Klein*, 884 F.3d 754, 757.

Tatum also argues that the district court erred by ruling against him on his Fourteenth Amendment claim, which was based on the medical care he was given when he refused to eat nutraloaf, once for as long as 25 days. Because Tatum was a pretrial detainee, we ask whether the care he received on hunger strike was objectively unreasonable. *See Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). Tatum asserts that medical staff should have sought a court order to forcibly feed him and that a jury could infer unreasonableness from the obvious risk of "just watching long periods of starvation." Though the medical staff did not try to forcibly feed Tatum, they did not just watch: staff evaluated Tatum twice a week, closely monitored his weight (which never fell more than seven pounds below his weight at the start of his pretrial detention), and devised a plan to increase his weight that appears to have worked and taken him back to his normal weight within a month. This care was not objectively unreasonable. Moreover, Tatum has not, as he must, shown any harm resulting from this care. *See Gabb v. Wexford Health Sources Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019).

Next, Tatum contests the district court's ruling on his claim that a nurse "ordered no medical safeguards to avoid concussion or sudden death" after he injured his head. The court concluded that he did not receive objectively unreasonable care because his medical records showed that other staff attended to the injury and performed "neuro checks." On appeal, Tatum argues that the court erroneously relied on those records, which he says were authenticated through an expert that the defendants had not properly disclosed. But he is mistaken. The medical records were introduced through a nursing supervisor's declaration—to which Tatum never objected.

Tatum responds that even if the records were properly introduced, he contradicted them by attesting that "nothing was done." But Tatum's verified complaint stated only that a single nurse failed to order certain measures, not that he received no treatment for the head injury. We must "focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care." *See McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018). It is undisputed that other staff

attended to Tatum and performed "neuro checks." And no evidence clarifies the nurse's role or suggests that she bore sole responsibility for Tatum's care. In any event, Tatum did not identify any harm he suffered because of this supposed lack of treatment. *See Gabb*, 945 F.3d at 1032.

Tatum next challenges the district court's conclusion that he failed to develop any argument for his due-process claim that the defendants punished him by transferring him to disciplinary housing before disciplinary hearings were held. Tatum argues that he developed his argument in earlier summary judgment filings. But we cannot expect the court to have sifted through years of litigation to try to understand an argument that Tatum had the opportunity set forth in response to the final motion for summary judgment. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003) ("[D]istrict courts … are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them.").

Similarly, Tatum contests the court's conclusion that he put forth no evidence that the jail had a practice of using a "restraint bed" as punishment. Tatum points us to the defendants' statement of proposed facts and to a 174-paragraph declaration but does not tell us what the evidence is. Such broad citations do not allow us to determine if there was any genuine dispute of material fact. Tatum cannot meet his burden to cite the parts on the record on which he relies, FED. R. APP. P. 28(a)(8)(a), by asking us to find support for him in nearly a hundred pages of material, *see Jeffers v. Comm'r of Internal Revenue*, 992 F.3d 649, 653 (7th Cir. 2021).

Tatum next argues that the court was wrong to enter judgment for the defendants on his state-law claims based on its determination that he failed to demonstrate his compliance with Wisconsin's notice-of-claim statute, WIS. STAT. § 893.80(1d) (requiring timely notice to the Milwaukee County Clerk). Tatum responds that he gave notice. But county officials attested that they could not locate any notice. Tatum produced no evidence in response, and he had the burden of proving that he gave notice. *See E-Z Roll Off, LLC v. County of Oneida*, 800 N.W.2d 421, 427 (Wis. 2011).

Tatum's last arguments about the third summary judgment decision—regarding free-exercise claims and two excessive-force claims (one about an incident that caused him a claustrophobic panic and the other about a guard's use of pepper spray)—are waived. The district court concluded that the defendants did not violate Tatum's rights in these instances and that, even if they did, they were entitled to qualified immunity because they did not violate clearly established law. Tatum does not challenge the

qualified-immunity rulings on appeal. When a district court provides two independent grounds for a holding, an appellant's failure to address one ground results in a waiver with respect to the entire issue. *Maher v. City of Chicago*, 547 F.3d 817, 821 (7th Cir. 2008).

**B.**

Tatum next challenges various discretionary decisions, unrelated to the summary judgment motions, that Judge Adelman made in 2019 and 2020.

**1.**

Tatum first takes issue with the court's decision to sever the claims that survived the final motion for summary judgment. He says the claims were properly joined under 28 U.S.C. § 1367(a). But § 1367(a) allows a district court to exercise subject-matter jurisdiction over state-law claims that are related to federal claims. The question here is whether Tatum's remaining *federal* claims were related *to each other*. In answering that question, we ask whether those claims were "discrete and separate." *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006). Severance was proper because the claims involved entirely different incidents and defendants—the first involved an inability to call witnesses at hearings, the second involved the use of a "restraint bed," the third concerned the use of a "restraint belt," and the last asserted improper use of force during an elevator ride. *See Gaffney*, 451 F.3d at 442.

Tatum alternatively contends that, to the extent severance was permissible, the court should have granted his motion to reconsider keeping the due-process claims in this case. The court allowed Tatum to pick which of his claims would stay in this case (and be tried first), but because Tatum did not select a claim in his response, the court chose (apparently at random). Tatum later moved for reconsideration and provided a purported missing page to show he had selected a different claim. But by the time he did so, the claims had already been severed. The court did not abuse its discretion by avoiding yet another delay in a litigation that had already taken eight years.

**2.**

Next, Tatum argues that the district court again violated the law of the case—this time by requiring him to cover the cost of subpoenaing witnesses after Judge Randa had ruled that the court would pay that cost. But, as Judge Adelman correctly concluded, we have said that district courts lack statutory authority to pay subpoena costs for a

litigant proceeding in forma pauperis. *See Marozsan v. United States*, 90 F.3d 1284, 1290–91 (7th Cir. 1996). Thus, nothing stopped Judge Adelman from revisiting this issue. *See Gilbert*, 591 F.3d at 902.

### 3.

Tatum next argues that admissions by two defendants—sheriff's deputies Carlson and Elliot—should have prevented Sheriff Lucas from giving contrary testimony at trial. *See* FED. R. CIV. P. 36. Sheriff Lucas was named in his official capacity for the purpose of Tatum's *Monell* claim against the county. Carlson and Elliot admitted that the jail had a policy of disallowing witnesses in disciplinary hearings. Tatum wanted to use this admission to prevent Lucas from denying the existence of such a policy, and he cites common-law agency principles to contend that the statements of Lucas's employees bind him (really, the county). Agency law is beside the point. Carlson and Elliot did not testify on behalf of the county under Rule 30(b)(6); they were fact witnesses responding to a request for admissions under Rule 36, so they could bind only themselves with their admissions. *See Nelson v. City of Chicago*, 810 F.3d 1061, 1074 n.6 (7th Cir. 2016). As the court concluded, the jury was free to weigh Lucas's testimony that the policy did not exist against the officers' admissions to the contrary.

### 4.

Tatum further argues that the district court erred in denying his motion to "re-add" the deputy inspector of the Sheriff's Office and the former sheriff as defendants. The court concluded that this motion was functionally a request for reconsideration of summary judgment for these defendants—a motion Tatum had made twice before. Because Tatum had not identified any manifest error of law or fact in the decisions, the court denied the motion. *See Burritt v. Ditlefsen*, 807 F.3d 239, 252–53 (7th Cir. 2015). Tatum does not attempt to untangle what place these defendants have in his claims and does not engage with the court's reasoning—in the underlying decision or the denials of reconsideration—so his argument is waived. *See Klein*, 884 F.3d at 757.

### 5.

Tatum also argues that Judge Adelman should have recused himself because of "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Tatum acknowledges that adverse rulings alone almost never constitute a valid basis for recusal, but his examples are just

that—plus his belief that the judge treated him "rudely." Like adverse rulings, "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish bias. *Id.* at 555–56.

## C.

Finally, Tatum contests several trial rulings, but he failed to order a trial transcript, as required under Federal Rule of Appellate Procedure 10(b)(2). Tatum was on notice that he had to order a transcript. We told him as much, *see* Dkt. 42, as did the defendants in their brief. Because we cannot meaningfully review the merits of Tatum's trial-related arguments without the transcript, the arguments are waived. *See Morisch v. United States*, 653 F.3d 522, 529 (7th Cir. 2011).

We have considered Tatum's other arguments, and none has merit.

AFFIRMED